IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL E. WILDA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | No. 13 C 5238<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Carl Wilda's claims for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 11] is granted in part and denied in part.

## BACKGROUND

### I. PROCEDURAL HISTORY

On December 23, 2010, Wilda filed claims for both Disability Insurance Benefits and Supplemental Security Income, alleging disability since March 10, 2010. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was

held on March 5, 2012. Claimant personally appeared and testified at the hearing. A vocational expert also testified.

On April 16, 2012, the ALJ denied Claimant's claims for Disability Insurance Benefits and Supplemental Security Income, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[1]

### A. <u>Background</u>

Claimant was born in 1972 and was thirty-seven years old at the time of his alleged onset of disability. He had previously worked as a fast food cook, specialty cook, and a home attendant. He alleges disability due to back pain that began with a work injury in March 2010.

### B. <u>Medical Evidence</u>

#### a. *Dr. George DePhillips*

Wilda began seeing neurosurgeon Dr. George DePhillips in December 2005 for lower back pain. He originally stopped seeing Dr. DePhillips in July 2006. Then in March 2010, Plaintiff's back pain worsened significantly after he bent over to pick up a laundry basket. He went to the emergency room the following day and was diagnosed with back spasm. He was given a Toradol injection, which partially relieved his symptoms. The notes from the visit stated that Wilda was experiencing

---

[1] The following facts from the parties' briefs are undisputed unless otherwise noted.

moderate pain with no radiation or tingling sensation, numbness, or loss of strength.

Wilda returned to Dr. DePhillips in September 2010 for a follow up examination. An MRI performed on September 3, 2010 showed a diffuse disc bulge at L4-5, with a small central protrusion producing minimal indentation on the thecal sac. Dr. DePhillips diagnosed Plaintiff with degenerative disc disease at L4-5 and discogenic low back pain exacerbated by the March 2010 injury. A month later, Wilda stated the pain continued to be at a 7, with radiation into both extremities and numbness in both legs after prolonged sitting. Dr. DePhillips found that the MRI findings were consistent with the conclusion that Plaintiff's pain was exacerbated by an annular tear. He recommended pain management that included epidural steroid injections.

In November 2010, after receiving an injection, Wilda reported no pain relief. Dr. DePhillips was initially reluctant to recommend physical therapy, because he was concerned it could worsen his condition. But in December, after Wilda again stated that an epidural injection did not improve his pain, Dr. DePhillips recommended a four-week physical therapy trial. At that time, Dr. DePhillips concluded that Wilda was totally disabled and would be for at least one year.

Physical therapy findings showed that Wilda's strength was improving, but his pain was not. Dr. DePhillips recommended three more weeks of physical therapy and another epidural injection.

Wilda saw Dr. DePhillips approximately monthly, and Plaintiff continued to complain that the physical therapy and injections were not giving him pain relief. In March 2011, a lumbar discogram was performed. It showed concordant pain response at the L4-5 level, reaching 9 on a visual analog scale. Dr. DePhillips concluded that Wilda would have a 2/3 chance of improving with surgery, but they decided to continue with less invasive treatment.

In a lumbar spine impairment questionnaire completed in April 2011, Dr. DePhillips repeated his diagnosis of degenerative disc disease and discogenic low back pain at the L4-5 level and concluded his prognosis was poor. The clinical finding supporting the diagnosis was tenderness at the L4-5 midline. The laboratory and diagnostic test results supporting the diagnosis was the September 2010 MRI and the March 2011 discogram. The report also listed Wilda's complaints of constant stabbing lower back pain shooting into both buttocks, which worsened with prolonged sitting/standing or bending/stooping. Dr. DePhillips concluded that Wilda could only sit for four hours in an eight-hour work day and stand/walk for two hours. Plaintiff would need to move around every forty-five to sixty minutes and would not be able to sit again for ten to fifteen minutes. The report stated that Wilda would need to take unscheduled breaks to rest for ten to fifteen minutes every sixty to ninety minutes, and he would likely be absent from work about two or three times per month. Dr. DePhillips opined that Wilda's pain would frequently be severe enough to interfere with his concentration and attention.

Wilda did not return to see Dr. DePhillips until February 2012, when he complained of worsening back pain, which was now at a 6-7 on a ten-point scale. Dr. DePhillips recommended an MRI of the lumbar spine to rule out progressive narrowing or lumbar spinal stenosis and to determine if his disc disease had progressed to the point where surgery was necessary.

### b. *Dr. Udit Patel*

Wilda began seeing Dr. Udit Patel for pain management in October 2010 and continued treatment with steroidal injections, nerve blocks, radiofrequency ablation, and medication through June 2012. Wilda reported no relief during the time of treatment.

Dr. Patel also completed a lumbar spine impairment questionnaire. The questionnaire was dated July 17, 2012, four months after the ALJ hearing, and was submitted to the Appeals Council. Dr. Patel diagnosed Wilda with low back pain with radiculopathy radiating to his legs and spinal osteoarthritis. Clinical findings supporting the diagnosis were limited range of motion in his legs and muscle spasm in the mid-back and lumbar spine. Diagnostic test results supporting the finding were a March 2011 lumbar CT showing central protrusion at L4-L5, the September 2010 MRI, and an x-ray showing disc narrowing and degenerative disc changes. Wilda had reported to Dr. Patel that he suffered from constant, severe, aching pain in his lumbar spine radiating to his buttocks and thighs. Dr. Patel did not complete the portion of the form seeking functional capacities with the notation that Wilda needed a functional capacity evaluation. Dr. Patel did state that the pain would be

5

severe enough to interfere with concentration and that he would possibly need to take unscheduled breaks as often as once or twice per hour for ten to fifteen minutes each.

C. **Plaintiff's Testimony**

Wilda testified that he has not been able to work since March 2010 because he cannot bend, sit, or stand for long periods of time. He cannot walk further than across the street or sit for more than a few minutes in a standard chair and forty-five to sixty minutes in a comfortable chair. He is most comfortable sitting upright in bed.

He lives with his parents, and his aunt does the household chores. It is difficult to shower due to pain, and he cannot drive. He sleeps poorly at night due to pain and often takes naps during the day. Wilda originally tried to avoid surgery but has since decided he wanted the surgery. He testified that he did not have the new MRI recommended by Dr. DePhillips to determine the need for surgery because his sole insurance, Workers' Compensation, will not agree to pay for it. He claims that he went to physical therapy as long as it was authorized by his insurance and recommended by his physician.

D. **Vocational Expert Testimony**

The ALJ asked the vocational expert ("VE") whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") limiting him to sedentary work with no sitting for more than forty-five to sixty minutes at a time, followed by standing/walking for ten to

fifteen minutes; no use of the lower extremities for foot controls; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing stairs or ramps; no climbing ladders, ropes, or scaffolds; and no work around hazards or moving machinery could perform any of Plaintiff's past work. The VE said that the person could not, but other jobs would be available, including surveillance system monitor, sorter, and assembler. If the individual were limited to sitting for four hours total, standing or walking two hours, and alternating sitting, standing, and walking every forty-five to sixty minutes for ten to fifteen minutes; required unscheduled breaks every sixty to ninety minutes for ten to fifteen minutes at a time; and would be absent two to three days a month, the person could not work. There would also be no work available for a person who would be off-task more than twenty percent of the workday.

### E. ALJ Decision

The ALJ found at step one that Wilda had not engaged in substantial gainful activity since his alleged onset date of March 10, 2010. At step two, the ALJ concluded that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine and obesity. The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a Listing. The ALJ then determined that Plaintiff retained the RFC to perform sedentary work, subject to additional limitations. Specifically, the ALJ opined that Wilda was limited to sitting for forty-five to sixty minutes at a time, followed by standing and/or walking for ten to fifteen minutes; no use of the lower extremities for the operation of foot controls;

7

occasional balancing, stooping, kneeling, crouching, crawling, and climbing stairs or ramps; never climbing ladders, ropes, or scaffolds; and no work around unprotected hazards. The ALJ concluded at step four that Claimant could not perform his past relevant work. At step five, based upon the VE's testimony and Wilda's age, education, work experience, and RFC, the ALJ concluded that he can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## **DISCUSSION**

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389

(7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning

9

behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Claimant argues that the ALJ's decision was in error because: (1) she failed to follow the treating physician rule; and (2) she improperly analyzed his credibility. Wilda further argues that remand is necessary based on new evidence submitted to the Appeals Council.

### A. <u>Treating Physician Rule</u>

Wilda maintains that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of his treating physician, Dr. DePhillips. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

The ALJ gave little weight to Dr. DePhillips' opinion because she found it to be inconsistent with the medical records and excessively limiting in light of the

11

objective findings. Specifically, the neurological examinations were often largely intact, and Dr. DePhillips rarely performed physical examinations. Treatment notes instead consisted primarily of Wilda's subjective complaints. She also rejected Dr. DePhillips' opinion related to the issue of disability, which is reserved to the Commissioner.

Plaintiff contends that Dr. DePhillips' opinion was based on clinical and diagnostic findings, namely evidence of tenderness at L4 through S1, as well as an MRI and discogram showing an annular tear. Wilda states that the lack of additional neurological findings did not render his opinion invalid. Dr. DePhillips frequently treated Wilda for his spinal pain, and he is a board-certified neurosurgeon. Wilda further argues that the ALJ gave too much weight to the opinions of the non-examining consultants, because they are not specialists in the relevant field, and it is not clear what evidence they reviewed in rendering their opinions. The Commissioner responds that the ALJ's reasoning was sound and supported by the record.

Although the ALJ was correct in disregarding Dr. DePhillips' opinion regarding the ultimate issue of disability, which is reserved to the Commissioner, *see Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), the Court finds that she failed to properly analyze his opinion as a treating physician with regard to Wilda's functional restrictions. Even if the ALJ were justified in not giving Dr. DePhillips' opinion controlling weight, she was required to explain what weight it did merit. Her statement that his "[n]eurological examinations were often largely intact" lacks

any explanation or context. She gives no reason why Dr. DePhillips was unreasonable in relying on Plaintiff's subjective complaints in his notes, or that those subjective complaints were inconsistent with other evidence in the record. The ALJ failed to fully consider his opinion in light of the lengthy treating relationship and Dr. DePhillips' specialty as a neurosurgeon.

The Court also agrees with Plaintiff that the ALJ failed to substantiate her choice to give considerable weight to the opinions of the medical consultants. The ALJ found that their opinions were "generally consistent with the evidence they had before them, including fairly minimal clinical findings," (R. 25), but what evidence they had before them is not clear from the reports. Neither report mentions the MRI, nor do they refer to pain as a symptom, only stiffness, numbness, and weakness. Moreover, the consultants were not specialists in the relevant field. Therefore, the ALJ needed to offer more support for her decision to favor their opinions over that of his treating physician.

### B. <u>Credibility</u>

Wilda next argues that the ALJ improperly evaluated his credibility. An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and

13

supported"). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see* SSR 96-7p.

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). When evaluating a plaintiff's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see* SSR 96-7p at *3. When the claimant attends an administrative hearing, the ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p at *5.

In this case, the ALJ found that the objective evidence undermined his credibility with regard to his complaints of disabling symptoms. Specifically, she noted a seven-month gap in treatment between the injury and the time he first sought regular treatment; he improved with physical therapy but did not follow up with that treatment; he refused to have surgery; and he acknowledged in a

14

functional report that he prepared food one or two times a day and would watch television.

The Court agrees with Wilda that the ALJ did not given adequate reasons for discrediting Wilda's subjective complaints of pain. Although she claims that he did not seek treatment from the date of the injury in March 2010 to October 2010, her decision cites a June 29, 2010 medical record. (R. 21.) The record also reflects that while physical therapy increased his strength, it never alleviated his pain, which is the allegedly disabling symptom. Additionally, while she characterized him as having refused surgery, the evidence shows that he initially sought less invasive treatment at the recommendation of his physician. He ultimately decided to pursue surgery, but it had not been approved by his Workers' Compensation carrier at the time of the ALJ hearing. Finally, the ALJ's assertion that preparation of meals and watching television demonstrates the ability to sustain full-time employment without pain is entirely unsupported. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (finding that an ALJ failed to explain how a claimant's daily activities were inconsistent with the medical record).

C.     **New Evidence Before Appeals Council**

Plaintiff next contends that the Appeals Council erred in rejecting as not "new and material" supplemental evidence submitted after the ALJ's decision. The supplemental evidence in question was the lumbar spine questionnaire completed by Dr. Patel in July 2012, three months after the ALJ rendered her decision.

The Appeals Council may grant review when it determines that the record, including any qualifying supplemental evidence, shows the ALJ's conclusions to be "contrary to the weight of the evidence." 20 C.F.R. § 404.970(b); *Getch v. Astrue,* 539 F. 3d 473 (2008). When it decides not to grant plenary review on this basis, its decision is "discretionary and unreviewable," and the ALJ's denial stands as a final and appealable order. *Perkins v. Chater,* 107 F.3d 1290, 1294 (7th Cir. 1997). Only an Appeals Council denial based on a mistake of law, such as an erroneous determination that newly submitted evidence is not material, can be reversed by the Court. *Eads v. Secretary of the Dep't of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir.1993).

Social Security Administration regulations require the Appeals Council to consider evidence that is "new and material" and "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). Evidence is "new" if it was unavailable to the Plaintiff at the time of the hearing and "material" if "there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Similia v. Astrue,* 573 F.3d 503, 522 (7th Cir. 2009) (citing *Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir. 2005)). Additionally, medical evidence postdating an ALJ's decision is excluded unless it is "relevant to the claimant's condition during the relevant time period encompassed by the disability application under review." *Schmidt,* 395 F.3d at 742.

In this case, the Appeals Council acknowledged that the information was new and related back to the relevant time period, but it nevertheless denied review.[2] If the Appeals Council concluded the new evidence was material, then the decision not to grant review would be unreviewable. Unfortunately, as is often the case in Appeals Council notices, "divining the basis of the Appeals Council's decision" to decline plenary review—and therefore whether the Court has jurisdiction to evaluate it—is not easy. *Barth v. Colvin,* 2015 WL 7180094, *6, No. 13 CV 7788 (N.D. Ill. Nov. 16, 2015.) The Notice of Appeals Council Action simply indicates that the Appeal Council "considered whether the Administrative Law Judge's action, findings, or conclusions is [sic] contrary to the weight of the evidence of record" and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 2.)

On its face, this oft-used language does not make it clear whether the Appeals Council considered the evidence to be material or not. *Farrell,* 692 F.3d at 771. As the Seventh Circuit has recently reiterated, the standard boilerplate, without any discussion of the specific evidence submitted, is insufficient to show that the Appeals Council found the supplemental evidence to be "new and material." *Stepp v. Colvin,* 795 F.3d 711, 724-25 (7th Cir. 2015); *see also Farrell*, 692 F.3d at 771 (interpreting similar boilerplate language "as stating that it has rejected [the plaintiff's] new evidence as non-qualifying under the regulation"). This is even true where the evidence is specifically referenced in the Appeals Council

---

[2] The Council also considered Dr. Patel's treatment records from August 14, 2012 to February 26, 2013, but found that they related only to the period after the ALJ's decision. Plaintiff does not dispute the Appeals Council's decision with respect to those records.

17

letter. *See Stepp*, 795 F.3d at 724. Therefore, this Court holds that the Appeals Council did not find the supplemental evidence to be qualifying and evaluates *de novo* whether the Appeals Council made an error of law in that determination.

According to Plaintiff, Dr. Patel's assessment was material because his opinion confirmed that of Dr. DePhillips, the only other treating source in the record. The Commissioner argues that the evidence adds no new information regarding Wilda's condition because it merely repeats diagnoses of low back pain, lumbar radiculopathy, and spinal osteoarthritis. Furthermore, it explicitly does not include an evaluation of Plaintiff's functional capacity, instead noting that Wilda "needs FCE." (R. 685-86.)

The Court concludes that the evidence is material. The lack of a functional capacity evaluation is essentially irrelevant in this case, because the ALJ already limited Wilda to sedentary positions. Plaintiff's claims of disability relate to his allegations of pain that would be frequently distracting, cause him to take unscheduled breaks, and/or make him miss work. Dr. Patel, who had an extensive history of treating Plaintiff, agreed with Dr. DePhillips that Wilda suffers from a disabling level of pain. Had the ALJ considered this opinion, there is a reasonable probability that she would have reached a different conclusion.

## CONCLUSION

For the foregoing reasons, Plaintiff Carl E. Wilda's motion for summary judgment [Doc. No. 11] is granted in part and denied in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

SO ORDERED. ENTERED:

DATE: **January 5, 2016**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**